JAMES F. WINTER, plaintiff in error, v. MATTHEWS, BURKE & CAMERON, defendants in error.

(Atlanta, January Term, 1871.)

1. AMENDMENTS—PARTIES TO ACTION.*—A new plaintiff, suing for the use of the former plaintiff, may be made by amendment. And the amendment is sufficiently certain, ·if the pleadings contain sufficient to enforce the verdict. R.

2. EVIDENCE—NEW TRIALS.—Where a party receives money

---

*AMENDMENTS—PARTIES TO ACTIONS.—If such changes by amendment were allowable before the Code, it must be clear that under §§ 3486, that which was moved in this case should have been allowed. That section provides as follows: "Where several plaintiffs sue jointly, the declaration may be amended by striking out the name of one or more of such plaintiffs. And when it becomes necessary for the purpose of enforcing the rights of such plaintiff, he may amend by substituting the name of another person in his stead, suing for his use." This section was doubtless a codification of the law pronounced in the decisions cited, but whether it be so or not, it has been construed by this court in the case of Winter v. Matthews, Burke & Cameron, 41 Ga. 652; Adams v. Barlow, 69 Ga. 306, 307.

Where a person brings suit upon a chose in action, though it be an open account, and he has only the equitable title thereto, he may amend his declaration by adding the name of the person who had the legal title, suing for his use. See Code, § 3486; Winter v. Matthews, 41 Ga. 652; Adams v. Barlow, 69 Ga. 302 (2), and cases cited. Such an amendment does not make a new cause of action, nor is it de-

Winter v. Matthews, Burke & Cameron

for investment, and the evidence conflicts as to the use made of the funds, and as to whether they were in fact used in investment, and the question is fairly submitted to the jury, on the law of the case, and the verdict of the jury is sustained by the evidence:

*Held,* That in such case there is no error in the Court below in refusing a new trial on this ground.

3. SAME—VERDICT.—Where the plea and proof of the defendant, by his own testimony, makes out a case of illegal contract, and there is other evidence denying it, and the jury find against such plea on the facts submitted under the law to the jury:

*Held,* That the verdict was not contrary to law, as the application of the law in such case turned upon the question of fact, of which the jury were properly to judge.

Amendment. New Trial. Before Judge Johnson. Muscogee Superior Court. May Adjourned Term, 1870.

*The petition of Matthews, Burke & Cameron averred that at certain times, therein set forth, they furnished Winter certain specified sums of money to be, by him, invested in high wines for their benefit, upon his promise, within a specified time, to return said money and part of the profits on said high wines, and that he did not make such investment and would not repay said money. Winter pleaded that he did make the investment as directed by plaintiffs, and that the investment was to be and was in one hundred barrels of whisky then in bond in New York, with intent by plaintiffs to make large profits by not paying the revenue justly due thereon to the United States, within intent to defraud the United States. The evidence showed that Winter received the money from one Brocket, who subsequently transferred his claim to Matthews, Burke & Cameron. Brocket narrated, in his way, the manner of the deposit, that said Winter was to be personally responsible, and his effort to get back the money

murrable for want of privity between the usor and usee. Estes *v.* Thompson, 90 Ga. 699, 17 S. E. Rep. 98. These cases are cited also in Germania Bank *v.* Collins, etc., Co., 113 Ga. 1011, 39 S. E. Rep. 421.

In a suit upon a chose in action by the holder of the equitable title thereto, the plaintiff may amend his declaration by adding the name of the person who holds the legal title, suing for his use. Germania Bank *v.* Collins, etc., Co., 113 Ga. 1010, 39 S. E. Rep. 421.

Again, in the case of the Aetna Insurance Company *v.* Sparks, 62 Ga. 193, it was held that if an original suit had been brought in the name of Bridget Ennis, it could have been amended by inserting the name of Mary Sparks for the use of Bridget Ennis, and this same section cited as authority. Adams *v.* Barlow, 69 Ga. 307.

In the case with which we are now dealing, the action was brought in the names of several plaintiffs, and it became necessary to enforce their rights, that A. A. Adams, trustee, etc., suing for their use, should be made a party plaintiff, and this right was denied, as we think, erroneously. Even in § 3480 of the Code, to which reference has already been made, it is especially provided that new parties and new causes of action may be brought in when authorized by law. And although it may be claimed that Adams was a new party, yet his name was necessary to the enforcement of the rights of the original plaintiffs, and, in our opinion, is one of the cases intended to be provided for by law. The causes of action was the recovery of land before the amendment, and that would have been the cause of action and the amendment been allowed. Adams *v.* Barlow 69 Ga. 307-308.

or its representative, if it was invested, and his failure, and that he was wholly ignorant of any fraudulent intent in the premises. Winter, in his own behalf, also testified as to said facts; said he was not to be personally liable and stated the facts upon which the plea as to fraud on the revenue was based, etc.

The plaintiffs' counsel had addressed the jury and defendants' counsel was replying. Then plaintiffs' counsel proposed to amend the petition by making it in favor of Brocket for the use of said Matthews, Burke & Cameron. This was allowed and was done by interlining Brocket's name and making it read, "The petition of F. L. Brocket, who brings the suit for the use of," etc., and by striking off the s in "petitioners" throughout the petition, the defendant's counsel not requiring a more formal amendment.

The jury found for the plaintiff for the amount sued for. Writer moved for a new trial upon the grounds, that the verdict was contrary to the evidence and the principles of equity and justice, strongly and decidedly against the weight of the evidence and against the law, and because of his failure *to get certain evidence which he could get for another trial. The Court refused a new trial, and that is assigned as error, on all the grounds for the new trial, and because the Court erred in allowing said amendment. In the argument here the point as to the new evidence was waived.

Peabody & Brannon, for plaintiff in error, insisted that the manner of making the amendment was too loose, etc.

H. L. Benning, E. H. Worrill, for defendants.

LOCHRANE, C. J.

1. This was a motion for a new trial upon the grounds that the jury found contrary to the evidence and law. A preliminary question is made on the pleadings as to the uncertainty of the plaintiffs' petition. The suit was originally in favor of Matthews, Burke & Cameron, and, without objection, was amended by adding a general money count, and the name of F. L. Brocket, who sues for their use. We need not say that under our law amendments are allowed at any stage of the proceedings, as matter of right, and either in form or substance, if there be enough in the pleadings to amend by. Section of the Code 3429. And by section 3436 this very case is provided for: "When it becomes necessary for the purpose of enforcing the rights of such plaintiff, he may amend by substituting the name of naother person in his stead, suing for his use."

The point raised on the amendment as made, that it is uncertain as to parties, we do not hold valid. The declaration is in the name of Brocket, for the use of these parties, who allege with sufficient distinctness the cause of action, and as the declaration as amended was neither demurred to nor claimed as a surprise, and the case proceeded to verdict, we would be cau-

tious in holding any exceptions to the pleadings, that contained sufficient to enforce the verdict, invoking such exercse of power.

2. In this case, the evidence showed that Winter had received money from Brocket for investment. This fact is *not disputed; it appears, by the receipts of Winter, that he got the money, and this suit was instituted to recover it back. Brocket, whose interests had been assigned to these usees, testified, that on the 7th of September, 1867, he had his first interview with Winter, brought about by the intervention of one Burton, and at which time the larger portion of the money was handed to Winter. The evidence discloses that this money was to be invested by Winter, and that he was to manage the affairs, and Brocket was to look to him for the return of the money and profits. How he was to invest, or through whom the matter of arrangements and profits were to be consummated, were not divulged. The division of profits was defined and Brocket, after paying over the money and taking the receipt therefor, retired from the scene without knowing anything, except that there was to be an investment that promised large results, in some ten days, from the purchase of one hundred barrels of whisky. After waiting the denouement of this business thus arranged, Brocket sought Winter, desiring settlement, but got none. In some of the several interviews following, Brocket desired to be put in communication with the party who held the property. This was not at first effected. Brocket, evidently from the evidence, was uneasy and followed up, with pertinacity his efforts to either get at the investment, or get the money. In one of the frequent importunities Winter expressed doubt of a certain man named Robbins having acted fairly in the investment. After this, Brocket, by letter, directed Winter not to invest, etc. In none of these varied interviews did Winter show any receipt from Robbins for the money, but invariably expressed his own responsibility for the money—at one time offering his own note, at sixty days, for it, which was declined, except he would give a firm note. Brocket also states, that in his hunt after the money, he went to Robbins, who said the amount was invested in wines in bond, but his business was with Winter. It appears that Winter was the bondsman of Robbins, who had a bonded warehouse, and Brocket swears that he had no knowledge of anything *illegitimate being intended, that he did not know how the profits were to be realized.

Brown, a witness introduced, stated that he was present at an interview between Winter and Brocket; in the interview, Winter said he had loaned the money to Robbins, who was in Washington, and when he returned the money should be paid, (appointing ten days afterwards as the time.) He went at the appointed time to Winter's office; Brocket demanded the money of Winter he had loaned him; Winter said he presumed Rob-

bins had invested it in low wines; Brocket then demanded if he had invested it, to show him in what; Winter wrote a short note to be delivered to Robbins at one hundred and nine Washington street; they went and found him, delivering the letter; his reply was, that he knew nothing of any investment for Winter; they returned to Winter's office and he was gone.

Plaintiff also introduced the sworn plea of Mr. Winter, which set out, among other things, that this money was handed to him to invest in whisky, at forty cents per gallon, the object being to cheat the United States out of its tax; that he took the money without responsibility to turn over as might be requested; that he had turned it over to Robbins at once; that he was not to be interested nor responsible; that Brocket told him, after he received the money, that it was the purpose of the parties concerned to sell the whisky without payment of the revenue tax to the government; that he did not know whether Robbins ever invested the money or not; that Robbins had only a few barrels in his bonded warehouse; he presented a receipt from Robbins for the amount, dated September 6th, 1867.

Mr. Winter was sworn for the defense, and substantially swore what was in his plea. The jury found for the plaintiff the amount of $2,350 40. Was the verdict of the jury contrary to the evidence? We think not. The receipts taken with the evidence is clearly sufficient to sustain it. The money went into the hands of Mr. Winter for investment. Whether he returned the money or accounted for it, was a question of fact for the jury, and they were authorized to *look into the whole transaction, and from the facts stated, from Both Brocket and Brown, parties without interest in the case, there was such a case made out as warranted the finding.

Was it against law? We think not. The evidence against Brown and Brocket showed no knowledge upon the part of Brocket with, or any participation in, the contemplated fraud upon the government. And the evidence of Mr. Winter in his own case was a question of credibility for the jury. Brocket says, positively, he did not. Winter says he did. The jury are the judges in such cases, and it is not necessary for us to go into the many reasons why the finding of the jury may be sustained on this point. Their finding either way would have been supported by proof. But even conceding that the weight of the evidence was in favor of such knowledge, there was evidence in this record that the principal was to be paid back to Brocket, and there is no evidence of any investment, or any cheat on the government, in fact, and there is some evidence of locus penitentiæ and directions not to invest. These questions, under a fair charge from the Court, have been passed upon, and we will not disturb the finding of the jury upon them.

Judgment affirmed.